$400

# LFR

Brett A. Berman (No. 204843)
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
(215) 299-2000
(215) 299-2150 (Fax)
BBerman@FoxRothschild.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| LUKOIL NORTH AMERICA, LLC,<br>a New York Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>ATLANTIS PETROLEUM, LLC,<br>a Pennsylvania Limited Liability Company,<br>KENNETH C. MORRISON, as Guarantor,<br>R.K. KEYSTONE MOBILE MART, INC.,<br>GURMEET SINGH, PRAKASH THAKRAR,<br>EELA THAKRAR, JOHN DOES 1-10<br>and XYZ CORP.,<br><br>Defendants. | CIVIL ACTION NO.: **15**   **2104**<br><br>**COMPLAINT**<br><br>ECF CASE |

NOW COMES the plaintiff, LUKOIL NORTH AMERICA, LLC ("Plaintiff" or "LNA"),

by its attorneys, Fox Rothschild, LLP and state its complaint against the defendants, ATLANTIS

PETROLEUM, LLC ("Atlantis"), KENNETH C. MORRISON ("Morrison"), R.K. KEYSTONE

MOBILE MART, INC. ("Keystone"), GURMEET SINGH ("Singh"), PRAKASH THAKRAR,

and EELA THAKRAR (Prakash and Eela, the "Thakrars"), JOHN DOES and XYZ CORP.

(together with Keystone, Singh, and the Thakrars, the "Operator Defendants," and the Operator

Defendants, together with Atlantis and Morrison, collectively, "Defendants").

ACTIVE 29704645v3 04/17/2015

## NATURE OF THIS ACTION

1.      This is an action for willful trademark infringement and false designation of origin under the United States Trademark Act, (The Lanham Act) 15 U.S.C. §§ 114 (1), 1125(a), brought by the exclusive licensee of the famous name and mark *LUKOIL* for use on and in connection with gasoline service station and convenience store services.  LNA is the exclusive licensee of the famous mark *LUKOIL*, registered in the United States Patent and Trademark Office by OAO LUKOIL, LNA's ultimate parent.  LNA, through its own efforts and those of its predecessors-in-interest, has authorized use of the *LUKOIL* brand for service stations throughout the Northeast and in this District.  In 2006, Plaintiff, through its predecessor, entered into a distributor franchise agreement with defendant Atlantis, under which Mr. Morrison is a guarantor of Atlantis's obligations, pursuant to which, Atlantis was the distributor of *LUKOIL* branded products and motor fuel to certain retail motor fuel service stations, approved under the distributor franchise agreement, including the retail motor fuel service stations at the following locations in the District: 5746 Woodland Ave., Philadelphia, PA; 630 Lincoln Hwy., Fairless Hills, PA; 417 Providence Rd., Clifton Heights, PA; 547 Front St., Catasauqua, PA; 1452 Tilghman St., Allentown, PA.  Operator Defendants Keystone and Singh own and/or operate the service station located at 1452 Tilghman St., Allentown, PA, and Operator Defendants Thakrars own or lease and operate the retail motor fuel service station located at 547 Front St., Catasauqua, PA.  Upon information and belief, Operator Defendants John Does and/or XYZ Corporations, not presently known to Plaintiff, own or lease and operate the retail motor fuel service stations located at 630 Lincoln Hwy., Fairless Hills, PA, 417 Providence Rd., Clifton Heights, PA, and 5746 Woodland Ave., Philadelphia, PA.  Upon termination of the franchise agreement in or around 2009, Atlantis was obligated to cease the use or display of all *LUKOIL*

2

brand marks or trade dress at all approved retail motor fuel service stations. Despite the

termination of the franchise relationship with Atlantis and each of the Operator Defendants,

without either LNA's permission or knowledge, the subject retail motor fuel service stations

have continued to operate while using and displaying indicia of the federally registered

trademark *LUKOIL*, such as the large, illuminated *LUKOIL* roadside sign, *LUKOIL* gas pump

signage, and/or other aspects of the trade dress associated with *LUKOIL* service stations. Upon

discovery of this infringing conduct, LNA, through its attorneys, demanded the removal of all

the *LUKOIL* branding from Defendants' retail motor fuel service stations. In response,

Defendants, in only a few stations have removed only some of the *LUKOIL* branding,

maintaining the continuing misrepresentation of their association with *LUKOIL*, thus leaving

LNA with no recourse but to seek the protection of this Court to enjoin the continued deception

to the public created by this willful and knowing infringement of the valuable *LUKOIL* brand.

## PARTIES AND JURISDICTION

2.      Plaintiff LUKOIL North America, LLC, is a limited liability company duly

organized through and existing under the laws of the State of Delaware with its principal place of

business located at 505 Fifth Avenue, New York, New York 10017. Plaintiff does business

throughout the United States, including this District.

3.      Defendant Atlantis Petroleum, LLC, is a limited liability company duly organized

through and existing under the laws Delaware, with its principal place of business located at 998

Old Eagle School Rd., Suite 1205, Wayne, PA 19087. Defendant does business throughout the

Mid-Atlantic and Northeastern Unites States, including this District.

4.     Defendant Kenneth C. Morrison, is the President of Atlantis Petroleum, LLC, and the guarantor of all of Atlantis's obligations to LNA under the Distribution Agreement (as defined below).  Upon information and belief, Mr. Morrison is a resident of the District.

5.     Defendant R.K. Keystone Mobile Mart, Inc., is a company duly organized through and existing under the laws of the Commonwealth of Pennsylvania.  Upon information and belief, Keystone owns and/or operates the service station located at 1452 Tilghman St., Allentown, PA 18102, which lies within the District.

6.     Defendant Gurmeet Singh upon information and belief, is a resident of the District.  Upon information and belief, Mr. Singh operates the retail motor fuel service station located at 1452 Tilghman St., Allentown, PA 18102, which lies within the District.

7.     Defendants Prakash Thakrar and Eela Thakrar, upon information and belief, are residents of the District.  Upon information and belief, the Thakrars operate a retail motor fuel service station located at 547 Front Street, Catasauqua, PA 18032, which lies within the District.

8.     Upon information and belief, certain unknown John Does and/or XYZ Corporations, own or operate service stations located at 630 Lincoln Hwy., Fairless Hills, PA 19030, 417 Providence Rd., Clifton Heights, PA 19018, and 5746 Woodland Ave., Philadelphia, PA 19143.

9.     The Court has original jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1338(a), and under the Lanham Act, 15 U.S.C. § 1121.  Further, subject matter jurisdiction exists under 28 U.S.C. § 1332, as there is diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.  This Court also has supplemental jurisdiction over claims brought under Pennsylvania state law and over all claims that are so related to the claim upon which this Court has original jurisdiction and are part of the

same case or controversy pursuant to 28 U.S.C. § 1367(a).  Venue is properly found in the

District pursuant to 28 U.S.C. § 1391.

**FACTS COMMON TO ALL CLAIMS**

**A.   THE GROWTH OF THE *LUKOIL* BRANDS**

10.      After the fall of the Soviet Union in the early 1990's, the petroleum industry in

Russia was reorganized into privately held companies, including the Plaintiff's licensor, OAO

LUKOIL.  Beginning in 1993, OAO LUKOIL was founded under the laws of the Russian

Federation and has rapidly grown into a fully integrated, vertically organized petroleum

company involved in all aspects of the industry, including discovery and ownership of oil fields,

refinery of crude oil, and retail sales of branded motor fuels.  Presently, OAO LUKOIL is

Russia's second largest oil company.  In 2012 alone, OAO LUKOIL pumped approximately 1.8

million barrels of crude oil per day.  OAO LUKOIL has operations in 40 countries around the

world, including, operating throughout the Middle Atlantic/North East regions of the United

States through its subsidiary, LNA, with annual worldwide sales in 2013 of $141 Billion U.S.

Dollars generating a net income in excess of $7 Billion U.S. Dollars.

11.     In 2000, OAO LUKOIL entered the United States' branded motor fuel market

with the acquisition of Getty Petroleum Marketing Inc. ("GPMI").  By 2003, OAO LUKOIL had

exclusively licensed GPMI to use the *LUKOIL* brand which began replacing the GETTY brand

at service stations operating throughout the Middle Atlantic/North East regions of the United

States, including service stations in this District.  In 2004, GPMI purchased a major group of

MOBIL branded service stations located in New Jersey and Pennsylvania, many of which have

subsequently become *LUKOIL* branded service station.

5

12.     LNA was formed by OAO LUKOIL in 2009 as a successor in interest to GPMI to operate the *LUKOIL* business in the United States, including the marketing and sales of *LUKOIL* branded motor fuels and lubricants through a network of over 300 *LUKOIL* branded service stations in the Middle Atlantic/North East regions of the United States.  LNA is the exclusive licensee for *LUKOIL* brand.

13.     As part of its sales of branded motor fuels, LNA enters into franchise agreements either directly with owners and operators of retail motor fuel service station locations or with wholesalers and/or distributors who purchase *LUKOIL* branded motor fuels for supply to approved motor fuel service station owners and/or operators in their network.  Pursuant to these agreements, the retail motor fuel service stations are licensed to operate under the *LUKOIL* brand, including the sale of *LUKOIL* branded motor fuels.

14.     As part of their marketing for the sale of *LUKOIL* branded motor oils, a distinctive trade dress for *LUKOIL* branded service stations, including the prominent use of the primary colors red and white, large *LUKOIL* signage at the roadside and on the gas pumps, a canopy design which incorporates the *LUKOIL* brand including *LUKOIL*, three chevrons (sergeant stripes), and a distinctively shaped edge to the canopy over the gas pumps, (the "K Channel") has been developed.  Each of these distinctive elements of trade dress, alone or in combination, and the collection of colors and designs create a distinctive and memorable trade dress exclusively associated with Plaintiff.  Below is a depiction of trade dress of a *LUKOIL* service station.

6



## B.   U.S. TRADEMARK REGISTRATION

15.    To protect the LUKOIL brand from infringers, OAO LUKOIL registered its

various trademarks with the United States Patent and Trademark Office including:

**Registration No. 4,036,862, registered in October 11, 2011**



International Classes:

35:  Demonstration of goods; market study; shop-window dressing; presentation
of goods on all communication means for retail sales purposes; sales
promotion for others; distribution of samples; dissemination of advertising
material in the nature of leaflets, prospectuses, printed matter and samples;
advertising; online advertising on a computer network; television advertising;
administrative processing of purchase orders; supply services for third
parties, namely, purchase of goods and services for third parties.

37:  Retreading of tires; tire repair, namely, vulcanization of tires; washing of
cars; washing of vehicles; anti-rust treatment for vehicles; vehicle polishing;
vehicle greasing; vehicle service stations for re-fueling and maintenance;
vehicle cleaning.

43:  Hotel services; fast-food restaurants and snackbars; cafe-restaurants; cafeterias.

7

**Registration No. 3,750,154, registered February 16, 2011**

# LUKOIL

International Class:

35: Retail store services featuring automotive parts and accessories; retail store services featuring convenience store items and gasoline; providing information about the trading of petroleum and petroleum products.

**Registration No. 3,725,905, registered December 15, 2009**

# LUKOIL

International Classes:

04: Diesel fuel (low sulfur); motor oil

35: Retail convenience stores

**Registration No. 3,725,904, registered December 15, 2009**



International Classes:

04:  Diesel fuel (low sulfur); and motor oil

35:  Retail convenience stores

**Registration No. 4,026,293, registered September 13, 2011**



<u>International Class:</u>

35: Retail tire stores; retail store services featuring automotive parts and accessories; franchising, namely, offering technical assistance in the establishment and operation of retail gasoline supply services; retail gasoline supply services; retail store services featuring convenience store items and gasoline; promoting the sale of credit card accounts through the administration of incentive awards programs; promoting the sale of goods and services of others through the distribution of printed materials and promotional contests.

16.  All of the foregoing registrations are in full force and effect with LNA as the exclusive licensee.  Copies of the certificates of registration are attached as Exhibits A through E, respectively.

## C.   DEFENDANTS' UNAUTHORIZED USE OF PLAINTIFF'S MARKS AND TRADE DRESS

### i.   Atlantis, Morrison, John Does, and XYZ Corp.

17.     Upon information and belief, Atlantis was an approved distributor of Plaintiff's motor fuel products to certain retail motor fuel service stations, including those retail motor fuel service stations at the following locations: 5746 Woodland Ave., Philadelphia, PA (the "Philadelphia Station"); 630 Lincoln Hwy., Fairless Hills, PA (the "Fairless Hills Station"); 417 Providence Rd., Clifton Heights, PA (the "Clifton Heights Station"); 547 Front St., Catasauqua, PA (the "Catasauqua Station"); 1452 Tilghman St., Allentown, PA (the "Keystone Station"), (collectively, the "Atlantis Distributor Stations").  Atlantis and GPMI entered into a PMPA Distributor Franchise Agreement, dated August 15, 2006 (the "Distribution Agreement"),

9

through which Atlantis began distributing Plaintiff's products to the Atlantis Distributor Stations. Mr. Morrison is and was the personal guarantor of all of Atlantis's obligations to LNA, under the Distribution Agreement.  Upon information and belief John Does and/or XYZ Corp., currently unknown to Plaintiff, own or lease and operate the Philadelphia Station, the Fairless Hills Station, and the Clifton Heights Station.

18.      In or about January 2009, the Distribution Agreement was terminated, and Atlantis was notified to cease all use or display of LUKOIL brand "Trade Identities" (as defined in the Distribution Agreement) at all Atlantis Distributor Stations.  Thereafter, in willful disregard of LNA's rights to the exclusive use of the *LUKOIL* brand and unbeknownst to Plaintiff and without Plaintiff's authorization, the Atlantis Distributor Stations continued to operate falsely and deceptively under the *LUKOIL* brand including all *LUKOIL* trademarks and trade dress while selling unbranded motor fuels having no connection, association, or affiliation with Plaintiff.

19.      Plaintiff discovered the infringing and deceptive conduct at two of Atlantis Distributor Stations in 2013, the Catasauqua Station and the Keystone Station.  Soon thereafter, on September 11, 2013, counsel for Plaintiff wrote to Mr. Morrison and Atlantis demanding that Atlantis remove all indicia of the *LUKOIL* trademarks from the Catasauqua Station and the Keystone Station.  A copy of the September 11, 2013 letter is attached hereto as Exhibit F.

20.      Plaintiff then discovered infringing and deceptive conduct at the three other Atlantis Distributor Stations, Philadelphia Station, the Fairless Hills Station and Clifton Heights Station, in early 2014.  Soon thereafter, on March 17, 2014, counsel for Plaintiff wrote to Mr. Morrison and Atlantis demanding that Atlantis remove all the *LUKOIL* trademarks from these locations.  Copies of the March 17, 2014 letters are attached hereto as Exhibit G.

10

21.     Counsel for Atlantis responded by letter, dated April 15, 2014, stating that the 2009 termination of the Distribution Agreement "effectively terminated all of Atlantis's rights and responsibilities under those contracts with respect to the subject service stations." A copy of Atlantis's April 15, 2014 letter attached hereto as Exhibit H.

22.     Counsel for Plaintiff additionally wrote to the Fairless Hills Station, on November 17, 2014, demanding that the station cease using all indicia of the *LUKOIL* trademarks from the Fairless Hills Station. Plaintiff did not receive a response. A copy of the November 17, 2014 letter is attached hereto as Exhibit I.

23.     To date, Atlantis has failed to remove all indicia of the *LUKOIL* brand from the Atlantis Distributor Stations, leaving intact varying amounts of indicia of the well-known *LUKOIL* marks and trade dress including the prominent use of the primary colors red and white, as well as the sergeant stripes and K Channel canopy.

24.     As recently as December 12, 2014, LNA's representative conducted one or more inspections of the Atlantis Distributor Stations. The photographs below—of the Philadelphia Station, the Fairless Hills Station, and the Clifton Heights Station, respectively—accurately depict Atlantis's, as well as John Does' and XYZ Corp.'s, willful and ongoing infringement of the registered *LUKOIL* trademarks and copying of all the elements of the distinctive *LUKOIL* trade dress:

11

**5746 Woodland Ave., Philadelphia, PA 19143 (December 12, 2014)**





**630 Lincoln Hwy., Fairless Hills, PA 19030 (December 8, 2014)**





**417 Providence Rd., Clifton Heights, PA 19018 (December 8, 2014)**



25.     Despite having full knowledge that by failing to remove all the signage and other

indicia of the *LUKOIL* brand and trade dress, Atlantis has been, and continues to be, infringing

the *LUKOIL* trademarks and trade dress at the Atlantis Distributor Stations.  Likewise, John

Does and XYZ Corp. have been and continue to be infringing the LUKOIL trademarks and trade

dress at the Fairless Hills Station, the Clifton Heights Station, and the Philadelphia Station.  Such

continuing, knowing, and willful infringement creates a likelihood of confusion among the

consuming public, by deceiving them into believing that the Atlantis Distributor Stations

dispense genuine *LUKOIL* brand motor fuels and other service station goods and services and

that the service stations are associated and connected with *LUKOIL* as an authorized retailer.

14

###### ii.    Keystone and Singh

26.    Upon information and belief, Mr. Singh and Keystone are and were the owners and/or lessees of the Keystone Station, located at 1452 Tilghman St., Allentown, Pennsylvania 18102, for all pertinent times herein.  Since owning and operating the Keystone Location, Keystone and Mr. Singh, in willful disregard of LNA's rights to the exclusive use of the *LUKOIL* brand and unbeknownst to Plaintiff and without LNA's authorization, have been and continue to operate the Keystone Station falsely and deceptively under the *LUKOIL* brand including all *LUKOIL* trademarks and trade dress while selling unbranded motor fuels having no connection, association, or affiliation with Plaintiff.

27.    Plaintiff discovered Defendants' infringing and deceptive conduct in 2013.  Soon thereafter, on December 12, 2013, counsel for Plaintiff wrote to Mr. Singh and Keystone demanding that they remove all the *LUKOIL* trademarks from the Keystone Station.  A copy of the December 12, 2013 letter is attached hereto as Exhibit J.

28.    Plaintiff, through its counsel, then sent a follow-up letters to Mr. Singh and Keystone, dated January 1, 2014, and January 12, 2015, but Defendants still failed to respond. Copies of the January 1, 2014 and January 12, 2015 letters are attached hereto as Exhibit K.

29.    As recently as January 20, 2015, LNA, through its attorneys, received  the photograph below from attorneys for Mr. Singh and/or Keystone, which, in reliance upon such photographic evidence and upon LNA's information and belief, accurately depicts Mr. Singh's and Keystone's willful and ongoing infringement of the registered *LUKOIL* trademarks and copying of all the elements of the distinctive *LUKOIL* trade dress:

15



30.     Despite having full knowledge that by failing to remove all the signage and other indicia of the *LUKOIL* brand and trade dress, Keystone and Mr. Singh have been, and continue to be, infringing the *LUKOIL* trademarks and trade dress at the Keystone Station by falsely selling unbranded motor fuels under the *LUKOIL* trademarks and distinctive *LUKOIL* trade dress.  Such continuing, knowing, and willful infringement creates a likelihood of confusion among the consuming public, by deceiving them into believing that the Keystone Station dispenses genuine *LUKOIL* brand motor fuels and other service station goods and services and that the service stations are associated and connected with *LUKOIL* as an authorized retailer.

31.     Despite having full knowledge that by failing to remove all the signage and other indicia of the *LUKOIL* brand and trade dress, as required by the Distribution Agreement, Atlantis and Morrison have been, and continue to be, infringing the *LUKOIL* trademarks and trade dress at the Keystone Station by permitting Singh and Keystone to falsely sell unbranded motor fuels under the *LUKOIL* trademarks and distinctive *LUKOIL* trade dress.  Such continuing, knowing,

16

and willful infringement creates a likelihood of confusion among the consuming public, by

deceiving them into believing that the Keystone Station dispenses genuine *LUKOIL* brand motor

fuels and other service station goods and services and that the service stations are associated and

connected with *LUKOIL* as an authorized retailer.

### iii.    Prakash and Eela Thakrar

32.    Upon information and belief, the Thakrars are and were the owners and/or lessees

of the Catasauqua Station, located at 547 Front Street, Catasauqua, PA 18032, for all pertinent

times herein.  Since owning and operating the Catasauqua Station, the Thakrars, in willful

disregard of LNA's rights to the exclusive use of the *LUKOIL* brand and unbeknownst to

Plaintiff, have continued without LNA's authorization to operate the Catasauqua Station falsely

and deceptively under the *LUKOIL* brand including all *LUKOIL* trademarks and trade dress

while selling unbranded motor fuels having no connection, association, or affiliation with

Plaintiff.

33.    Plaintiff discovered the Thakrars' infringing and deceptive conduct in late 2013.

Soon thereafter, on December 12, 2013, counsel for Plaintiff wrote to the Thakrars demanding

that they remove all the *LUKOIL* trademarks from the Catasauqua Station.  A copy of the

December 12, 2013 letter is attached hereto as Exhibit L.

34.    The Thakrars, through their attorney, responded by e-mail on February 28, 2014,

informing Plaintiff of the partial debranding of the Catasauqua Station.  A copy of the February

28, 2014 e-mail is attached hereto as Exhibit M.  On March 11, 2014, Plaintiff, through its

counsel, sent a letter requesting that the Thakrars remove the remaining indicia of the *LUKOIL*

brand, including the K Channel canopy.  A copy of the March 11, 2014 letter is attached hereto

as Exhibit N.

17

35.     Plaintiff attorney herein, sent a follow-up letter to the Thakrars' attorney, dated

January 12, 2015, but the Thakrars have since failed to respond.  A copy of the January 12, 2015

letter is attached hereto as Exhibit O.

36.     Recently, LNA's representative inspected the Catasauqua Station.  The

photograph below accurately depicts the Thakrars' willful and ongoing infringement of the

registered *LUKOIL* trademarks and copying of all the elements of the distinctive *LUKOIL* trade

dress:







37.     Despite having full knowledge that by failing to remove all the signage and other

indicia of the *LUKOIL* brand and trade dress, the Thakrars have been, and continue to be,

infringing the *LUKOIL* trademarks and trade dress at the Catasauqua Station by falsely selling

unbranded motor fuels under the *LUKOIL* trademarks and distinctive *LUKOIL* trade dress.  Such

continuing, knowing, and willful infringement creates a likelihood of confusion among the consuming public, by deceiving them into believing that the Thakrars' service station dispenses genuine *LUKOIL* brand motor fuels and other service station goods and services and that the service stations are associated and connected with *LUKOIL* as an authorized retailer

38.      Despite having full knowledge that by failing to remove all the signage and other indicia of the *LUKOIL* brand and trade dress, as required by the Distribution Agreement, Atlantis and Morrison have been, and continue to be, infringing the *LUKOIL* trademarks and trade dress at the Catasauqua Station by permitting the Thakrars to falsely sell unbranded motor fuels under the *LUKOIL* trademarks and distinctive *LUKOIL* trade dress.  Such continuing, knowing, and willful infringement creates a likelihood of confusion among the consuming public, by deceiving them into believing that the Catasauqua Station dispenses genuine *LUKOIL* brand motor fuels and other service station goods and services and that the service stations are associated and connected with *LUKOIL* as an authorized retailer.

## COUNT I
### (Trademark Infringement, 15 U.S.C. §§ 1114(1))
### (As Against All Defendants)

39.      Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.      The federal registration of the *LUKOIL* trademarks as evidenced by the attached certificates, together with the extensive use of the *LUKOIL* trademarks in commerce, provides Plaintiff, as exclusive licensee, with the exclusive right to use the registered marks in commerce on and in connection with the goods and services specified in the certificates.

20

41.     Defendants' flagrant and willful infringing use of Plaintiff's registered marks without the permission of the Plaintiff is likely to cause confusion, to cause mistake, or to deceive the public as to the source or origin of the Defendants' goods and services.

42.     Defendants' infringing conduct is knowing, willful, deliberate, and intended to benefit Defendants to the Plaintiff's detriment.

43.     As a result of Defendants' ongoing infringement, Plaintiff has suffered and continues to suffer irreparable harm, specifically to the consuming public and to Plaintiff's business and goodwill represented by the registered trademarks.

44.     By reason of the foregoing, Plaintiff, as exclusive licensee, is entitled to injunctive relief against Defendants' infringing acts pursuant to 15 U.S.C. § 1116, and, due to the willful nature of Defendants' infringement, Plaintiff is entitled to Defendants' profits, as well as damages in an amount to be determined at trial, and the costs of the present action.  Plaintiff additionally is entitled, under 15 U.S.C. § 1117, to a judgment against Defendants for three times the amount of damages, together with an award of reasonable attorneys' fees.

## COUNT II
### (Trade Dress Infringement, 15 U.S.C. § 1125)
### (As Against All Defendants)

45.     Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46.     Defendants' acts, as set forth above, constitute copying of Plaintiff's common law rights in the elements of the distinctive *LUKOIL* trade dress, in violation of the Lanham Act, 15 U.S.C. § 1125(a), by creating a false designation of origin which is likely to cause confusion, mistake, or deception, thereby causing substantial and irreparable injury to the public and to Plaintiff's business reputation and good will.

47.    As a result of Defendants' willful infringement and unlawful acts, Defendants have been, and continue to be, unjustly enriched by profits that Defendants have made in connection with Defendants' commercial use of the *LUKOIL* trade dress.

48.    Defendants' continuing infringement has caused and, absent injunctive relief, will continue to cause irreparable harm to Plaintiff.  Plaintiff has no adequate remedy at law. Accordingly, Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendants from engaging in further acts of infringement pursuant to 15 U.S.C. § 1116.

49.    As a direct and proximate result of Defendants' willful and ongoing conduct, Plaintiff has suffered and is entitled to monetary damages in an amount to be determined at trial. Plaintiff is also entitled to the costs of the present action, including reasonable attorneys' fees, as well as pre- and post-judgment interest as provided in 15 U.S.C. § 1117.

50.    Because Defendants' infringement is willful and in conscious disregard for Plaintiff's trade dress, Plaintiff is entitled to the trebling of damages in order to provide just compensation.

**COUNT III**
**(False Advertising, 15 U.S.C. § 1125(a)(1)(B))**
**(As Against Atlantis, Morrison, the Thakrars, John Does, and XYZ Corporations)**

51.    Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.    Plaintiff's exclusive use of the registered marks and trade dress and its extensive use and promotion thereof have established in the minds of the general public a strong association between the registered marks and the goods, services, and goodwill of the *LUKOIL* brand and trade dress.

22

53.     From 2011 through 2014, Defendants' flagrant and ongoing use of Plaintiff's registered marks and trade dress caused a likelihood of confusion, to cause mistake, or to deceive the public as to the source or origin of Defendants' goods and services and as to an association, connection, or affiliation with Plaintiff and its goods and services.

54.     Upon information and belief, Defendants have removed some *LUKOIL* branding including roadside pump signage, but retained the use of and look and feel of the *LUKOIL* trade dress which creates a material misrepresentation to the consuming public that LUKOIL has gone out of business, not that Defendants' authorization to use the LUKOIL marks has been terminated.

55.     Defendants' acts, as set forth above, constitute a deliberately false and misleading misrepresentation of the status of Plaintiff's business, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by creating a false representation of fact that Plaintiff has gone out of business.

56.     As a result of Defendants' ongoing acts of false advertising, Plaintiff has suffered, and with continue to suffer, irreparable harm to Plaintiff's registered marks and trade dress and to Plaintiff's business reputation and goodwill, unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

57.     Defendants' continuing false advertising has caused and, absent injunctive relief, will continue to cause irreparable harm to Plaintiff.  Plaintiff has no adequate remedy at law.  Accordingly, Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendants from engaging in further acts of infringement pursuant to 15 U.S.C. § 1116.

58.     As a direct and proximate result of Defendants' willful and ongoing conduct, Plaintiff has suffered and is entitled to monetary damages in an amount to be determined at trial.

23

Plaintiff is also entitled to the costs of the present action, including reasonable attorneys' fees, as well as pre- and post-judgment interest as provided in 15 U.S.C. § 1117.

59.    Because Defendants' infringement is willful and in conscious disregard for Plaintiff's trademarks and trade dress, Plaintiff is entitled to the trebling of damages in order to provide just compensation.

**COUNT IV**
**(Common Law Trademark Infringement)**
**(As Against All Defendants)**

60.    Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.    Plaintiff's licensed and exclusive use of the registered *LUKOIL* marks and its extensive use and promotion thereof have established in the minds of the general public a strong association between the registered marks and the goods, services, and goodwill of the *LUKOIL* brand provided exclusively by Plaintiff.

62.    Defendants' flagrant and ongoing misuse of Plaintiff's registered marks is likely to cause confusion, to cause mistake, or to deceive the public as to the source or origin of Defendants' goods and services and to cause a likelihood of confusion as to an association, connection, or affiliation with Plaintiff's business.

63.    Defendants' knowing, willful, and deliberate conduct constituting trademark infringement has unjustly enriched Defendants to Plaintiff's injury and harm.

64.    As a result of Defendants' ongoing infringement, Plaintiff has suffered, and continues to suffer, irreparable harm, specifically the confusion of the consuming public and the harm to Plaintiff's business and goodwill represented by the trademarks.

24

65.     By reason of the foregoing, Plaintiff is entitled to injunctive relief against Defendants, and, due to the willful nature of Defendants' infringement, Plaintiff is entitled to Defendants' profits, as well as damages in an amount to be determined at trial, and the costs of the present action. Plaintiff additionally, because of the knowing and willful character of this infringement, is entitled to punitive and exemplary damages, awarded together with reasonable attorneys' fees.

**COUNT V**
**(Common Law Unfair Competition)**
**(As Against All Defendants)**

66.     Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67.     Plaintiff's licensed and exclusive use of the registered marks and trade dress and its extensive use and promotion thereof have established in the minds of the general public a strong association between the registered marks and the goods, services, and goodwill of the *LUKOIL* brand.

68.     Defendants' flagrant and ongoing use of Plaintiff's registered marks and trade dress is likely to cause confusion, to cause mistake, or to deceive the public as to the source or origin of Defendants' goods and services and as to an association, connection, or affiliation with Plaintiff and its goods and services.

69.     Defendants' willful and deliberate misuse of Plaintiff's trademarks and trade dress has resulted in the knowing misappropriation of Plaintiff's goodwill and business reputation all to Plaintiff's detriment. Defendants' unfair and deceptive conduct has unjustly enriched Defendants, damaged Plaintiff, and is the direct and proximate cause of consumer confusion.

70.     As a result of Defendants' ongoing acts of unfair competition, Plaintiff has

suffered, and will continue to suffer, irreparable harm to Plaintiff's registered marks and to

Plaintiff's business reputation and goodwill, unless enjoined by this Court.  Plaintiff has no

adequate remedy at law.

71.     By reason of the foregoing, Plaintiff is entitled to injunctive relief against

Defendants, and, due to the willful nature of Defendants' infringement, Plaintiff is entitled to

Defendants' profits, as well as damages in an amount to be determined at trial, and the costs of

the present action.  Plaintiff additionally, because of the knowing and willful character of this

infringement, is entitled to punitive and exemplary damages, awarded together with reasonable

attorneys' fees.

**COUNT VI**
**(Dilution Under Pennsylvania Trademark Act, 54 Pa. Cons. Stat. Ann § 1124)**
**(As Against All Defendants)**

72.     Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 71 of this

Complaint as if fully set forth herein.

73.     As set forth above, the exclusively licensed *LUKOIL* trademarks and trade dress

are distinctive and have become famous and well-recognized throughout the United States,

including this District, well before Defendants began their unauthorized use of Plaintiff's marks

and trade dress in commerce.

74.     Defendants' flagrant and ongoing use of the exclusively licensed *LUKOIL*

trademarks and trade dress in connection with the sale of branded motor fuels and other goods

and services—not those of the Plaintiff—reduces the capacity of the marks and trade dress

exclusively to identify and distinguish the *LUKOIL* goods and services.

26

75.    By reason of the foregoing and due to the willful nature of Defendants' dilution, Plaintiff is entitled, under 54 Pa. Cons. Stat. Ann. § 1125, to injunctive relief, damages in an amount to be determined at trial, disgorgement of Defendants' profits, and the costs of the present action, including attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and an order in Plaintiff's favor and against Defendants:

(a) for the issuance of a preliminary and then a permanent injunction enjoining Defendants from continued unlawful use of Plaintiff's registered and common law trademarks and trade dress, including the removal of all *LUKOIL* trade dress, removal of the K Channel from the canopy, and any and all other infringing indicia of *LUKOIL* marks and trade dress by Defendants;

(b) for an accounting and payment to Plaintiff of all gains, profits and/or advantages derived by Defendants from Defendants' trademark infringement, trade dress infringement, dilution, unfair competition, and false advertising; and/or for payment of Plaintiff's lost profits caused by Defendants' trade dress infringement, trademark infringement, dilution, unfair competition, and false advertising;

(c) for compensation to Plaintiff of any advertising or other expenses necessary to dispel any confusion caused by Defendants' trademark infringement, trade dress infringement, dilution, unfair competition, and false advertising;

(d) for damages suffered by Plaintiff as a result of Defendants' trademark infringement, trade dress infringement, dilution, unfair competition, and false advertising, in an amount to be determined at trial, but no less than $75,000.00, plus costs and interest;

(e) for treble damages the amount of actual damages suffered by Plaintiff;

(f) for a judgment for Plaintiff against Defendants Atlantis and Kenneth C. Morrison holding them jointly and severally liable for the acts of all Defendants;

(f) for such other relief as the Court deems proper within the provisions of the Lanham Act and Pennsylvania's unfair competition laws;

(g) for a judgment for Plaintiff and against Defendants for interest, costs, and reasonable attorney's fees incurred in the prosecution of this action; and

(h) for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
April 17, 2015

                                        Respectfully submitted,


                                        Brett A. Berman
                                        FOX ROTHSCHILD, LLP
                                        2000 Market Street, 20th Floor
                                        Philadelphia, PA 19103-3222
                                        (215) 299-2000
                                        (215) 299-2150 (Fax)
                                        BBerman@foxrothschild.com
                                        Counsel for Plaintiff
                                        *LUKOIL North America, LLC*

Of Counsel
William R. Hansen
Justin J. Krane
100 Park Avenue, Suite 1500
New York, NY 10017
Tel: 212-878-7900
Fax: 212-692-0940